***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and the briefs before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case; the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant was a duly qualified self-insured with Key Risk Management Services as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff's average weekly wage was $512.08, which yields a weekly compensation rate of $341.40.
5. The issue for determination is whether plaintiff sustained an injury by accident arising out of and in the course of his employment on 30 July 2002, and if so, to what benefits may he be entitled under the Act?
6. The parties stipulated the following documentary evidence:
a. Medical records, and
b. I.C. Forms and filings.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a twenty-nine year old male. He was five feet eleven inches tall and weighed 295 pounds. He holds a Master's Degree in Business Administration. From 30 April 2001 through 20 August 2003, he worked as a mental retardation habilitation coordinator and a qualified developmental disability professional with defendant-employer. His duties included serving as manager of a group home and being a clinical team leader for clients who are severely and profoundly mentally retarded.
2. On 30 July 2002, plaintiff sustained an injury to his back when he attempted to lift a paralyzed wheelchair-bound resident, with the assistance of a certified nursing assistant (CNA), to take the resident to a social event at another area. After the CNA let go of the resident, plaintiff heard a pop and felt a warm sensation in his back to his toes, as he stood in a twisted position trying to support the resident's weight unassisted.
3. On 2 August 2002, plaintiff reported his back injury to his supervisor, Robert W. Ritz, telling him he would be late for work because he had hurt his back lifting a resident and was going to the doctor.
4. Plaintiff first sought medical treatment on 2 August 2002 with Dr. Wayne Wilson, his primary care physician. He gave a history of "fairly deep" pain in his low back for the past 2 — 3 days. He further reported that he did a lot of lifting and twisting at work. Dr. Wilson prescribed Skelaxin and Mobic for the back pain. Dr. Wilson initially diagnosed plaintiff with muscle spasms and low back strain as a result of the injury he sustained while lifting the resident at work.
5. Following his examination with Dr. Wilson, plaintiff and his family traveled to Ohio for a previously scheduled family vacation. While attempting to swing a golf club during the trip, plaintiff experienced an increase in his back pain in the same area he injured on 30 July 2002. He stayed in bed for a couple of days after the golf club incident.
6. Plaintiff felt a radiating of his back pain down his left leg when he bent down to tie his shoes on another day during his vacation.
7. On 19 August 2002, plaintiff returned to Dr. Wilson, reporting the radiating pain and the two episodes of pain while on vacation. Dr. Wilson prescribed Relafen, Flexeril, Davrocet and a steroid pack for the suspected sciatica and ordered an MRI.
8. Plaintiff's MRI revealed mild degenerative changes at L4-5, stenosis secondary to a central disc protrusion at L4-5 and a disc protrusion at L5-S1. Dr. Wilson referred plaintiff to neurosurgeon Dr. Mark Marchese for additional treatment due to the MRI findings.
9. On 1 October 2002, Dr. Marchese began treating plaintiff. Plaintiff reported having injured his back at work lifting a patient and experiencing more pain while swinging a golf club on vacation. He reported pain radiating to his left hip and buttocks. Dr. Marchese diagnosed plaintiff with left L5 radiculopathy. He found plaintiff had a small spinal canal which predisposed him to nerve root compression. A subsequent myelogram confirmed bilateral nerve root defects at L4-5. Dr. Marchese referred plaintiff to his partner, Dr. David Jones, for surgery.
10. On 11 November 2002, Dr. Jones performed surgery on plaintiff's lumbar spine at L4-5, including laminectomies, bilateral L4-5 and L5-S1 medial facetectomies and foraminotomies, and bilateral L4-5 discectomy.
11. Plaintiff was temporarily totally disabled from earning wages from 11 November 2002 through 1 January 2003, when he returned to work with the employer at the same or greater wages.
12. Plaintiff left his job with defendant-employer on or about 20 August 2003, when he took another job at greater wages, as the area program manager for a youth group home provider for residents with emotional and behavioral problems.
13. Dr. Jones has opined, and the Full Commission finds as fact, that most likely plaintiff had some degree of annular tear or disc protrusion at the time he lifted the patient; and this tear or protrusion was aggravated by the subsequent activities.
14. Although plaintiff has reached maximum medical improvement, he has not been rated for permanent partial impairment to his back as a result of the compensable injury.
15. A number of plaintiff's coworkers testified that he had discussed hurting his back when lifting a patient on 30 July 2002 in work meetings and individual conversations. He also told them about his back problems while on vacation.
16. In his direct testimony, plaintiff's supervisor, Mr. Ritz, did not recall plaintiff mentioning the incident in August of 2002, and indicated plaintiff reported his injury sometime in October of 2002. However, his testimony on this issue is given little weight due to the corroborative testimony of plaintiff's coworkers confirming that plaintiff had stated in work meetings that he had injured his back while lifting a resident on 30 July 2002. Mr. Ritz did admit that plaintiff reported hurting himself lifting a particular patient.
17. Mr. Ritz's testimony that plaintiff did not report the 30 July 2002 incident until sometime in October is also given little weight because defendants did not allege that plaintiff failed to give timely notice of his claim as a basis of the denial of the claim and they did not include it as an issue in the Pre-Trial Agreement. Secondly, four of plaintiff's coworkers testified plaintiff had mentioned in staff meetings and otherwise that he hurt himself when he lifted the resident. Thirdly, plaintiff testified and the Full Commission so finds, that he called in to let Mr. Ritz know he would be late to work because he was going to the doctor after having hurt his back lifting the resident. In the position plaintiff held at the facility, it would have been critical for him to make such a call to his supervisor to advise him if he was going to be late at work, since another staff member would have to be placed in charge in plaintiff's absence. Therefore, based on the competent evidence of record, plaintiff injured his back on 30 July 2002 when he lifted the resident, and further, he reported this to Mr. Ritz on 2 August 2002.
18. The medical treatment plaintiff has received as a result of his injury, including surgery, was reasonably required to effect a cure, provide relief or lessen his disability.
 ***********
The foregoing findings of fact engender the following
 CONCLUSIONS OF LAW
1. In order to qualify for compensation under the Workers' Compensation Act, a claimant must prove both the existence and extent of disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593, 290 S.E.2d 682(1982). Plaintiff has proven by competent evidence he sustained an injury as a result of a specific traumatic incident of the work assigned by defendant employer on 30 July 2002 when he hurt his back while lifting a resident. N.C. Gen. Stat. § 97-2(6).
2. Where the exact nature and probable genesis of a particular injury involves complicated medical questions removed from the ordinary experience of the layperson, only a qualified expert witness can give an opinion as to the nature and cause of the injury. Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980). In the instant case, plaintiff has proven by competent evidence that his disc injury was caused by the work incident of 30 July 2002.
3. Plaintiff is entitled to temporary total disability compensation at the rate of $341.40 per week for the period from 11 November 2002 through 1 January 2003. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to have defendant pay for all medical expenses incurred or to be incurred as a result of the compensable injury which are reasonably required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25. This shall also include a return appointment with Dr. Jones for purposes of determining any permanent impairment he may retain as a result of the compensable injury.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendant shall pay temporary total disability compensation to plaintiff at the rate of $341.40 per week for the period from 11 November 2002 through 1 January 2003. Said compensation has accrued and shall be paid in a lump sum.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to Plaintiff's counsel.
3. Defendant shall pay medical expenses incurred or to be incurred when bills for the same have been approved in accordance with procedures adopted by the Industrial Commission.
4. Defendant shall pay the costs.
5. As plaintiff has not been rated, this Opinion and Award does not address the issue of permanent partial impairment. If the parties are unable to agree, after plaintiff returns to Dr. Jones to be rated, they may request a hearing.
This the ___ day of August 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/__________ THOMAS BOLCH COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER